UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

 JOHN A. CRESPO, Jr.; MICHAEL J. AQUILINA;
MARY ANN AUCKLAND; CHARLIE BARKOWSKI;
STEVEN A. CAPPON; JAMES DeCANN;
CHRISTOPHER HOWELL; VINCENT LOMBARDINI;
RICHARD M. ORSINO; ROBERTO ORTIZ;
DANIEL POWELL; JOHN TADDONIO;
KENNETH M. WILLIS, on behalf of themselves
and all others similarly situated,

                                        Plaintiffs,

                                                                    DECISION AND ORDER

                                                                    10-CV-6590L

                        v.


COUNTY OF MONROE, NEW YORK;
MONROE COUNTY SHERIFF'S DEPARTMENT;
PATRICK M. O'FLYNN, in his official capacity as MONROE
COUNTY SHERIFF,


                                        Defendants.

_____


        Thirteen named plaintiffs bring this action on behalf of themselves and others similarly

situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New

York Labor Law.   Plaintiffs, employees of the Monroe County Sheriff's Department ("Sheriff's

Department"), allege that defendants--Monroe County ("County"), the Sheriff's Department, and

Patrick O'Flynn, who is sued in his official capacity as Monroe County Sheriff–have violated

those statutes in a number of ways, which generally relate to plaintiffs' pay for attending or

conducting "roll call briefings," which are meetings that take place at the start of plaintiffs' shifts.[1]

Defendant has moved for summary judgment dismissing the complaint.  Plaintiffs have cross-moved for summary judgment on the issue of liability.

## BACKGROUND

Many of the relevant facts are undisputed; at the Court's request, the parties have filed a "Joint Statement of Facts and Issues" ("JSFI"), laying out the facts and issues that are not in dispute, along with the relevant facts and issues that are in dispute.  Dkt. #54.

All of the plaintiffs are currently employed in the Sheriff's Department's Court Security Bureau.  All of the plaintiffs also have one of the following civil service titles:  (1) Deputy Sheriff Court Security Sergeant ("sergeant"); or (2) Deputy Sheriff Court Security ("deputy").

The collective bargaining agreement ("CBA") governing plaintiffs' employment provides for a 37.5-hour workweek, from Monday through Friday; in other words, plaintiffs work a 7.5-hour shift each workday.

Under the CBA, the plaintiffs are paid at their contractual hourly rate for all hours worked up to 37.5 hours in a workweek.  JSFI ¶ 1.  The CBA further states that "[h]ours worked between [37.5] and [40] hours within the workweek shall be paid for in compensatory time off at the

---

[1]Although the amended complaint sets forth allegations supporting a "collective" action under the FLSA and a class action under Rule 23 of the Federal Rules of Civil Procedure, *see* Dkt. #15 ¶¶ 23-32, no motion to certify a collective action or Rule 23 class has ever been filed in this action.

straight time rate." *See* CBA (Dkt. #46-4) § 10.2.1.  Thus, for time worked between 37.5 and 40 hours in a workweek, plaintiffs earn time credits that they can use in the future.

For all hours worked in excess of 40 hours in a workweek, the CBA provides that employees will be paid at one and a half times the employee's basic contractual rate.  *Id.*  When calculating overtime, the CBA provides that hours paid but not worked for holidays, compensatory time off and vacation leave are counted as time worked, *id.* § 10.2.3, and that "[c]ompensatory time may be considered a manner of payment in-lieu of overtime at the option of the employee ... ."  *Id.*

The parties do not dispute that at the beginning of their shifts, deputies are required to attend a 15-minute "roll call briefing."  Sergeants are required to attend their own 15-minute roll call briefing, and then to attend and administer the deputies' 15-minute briefing.  In other words, sergeants begin work 30 minutes before their shifts formally begin, and deputies begin work 15 minutes prior to their shifts.  Those roll call briefings are not counted in plaintiffs' basic 37.5-hour workweek.

With respect to these briefings, the CBA states that "[i]n recognition of the fact that all members of the bargaining unit are required to assemble for a briefing fifteen (15) minutes prior to the beginning of their tour of duty, payment for roll call shall be made."  *Id.* § 8.5.1.  Sergeants are paid a lump-sum payment ("stipend") of $88 per pay period for these briefings, while deputies receive $60 per pay period.  While the parties do not dispute that in practice, sergeants are required to attend both their own and deputies' roll call briefings, the CBA does not expressly acknowledge that fact; it simply refers to employees' attendance at "a briefing," as stated above.

- 3 -

Prior to July 2011, the stipends for attending roll call briefings were not used when calculating overtime pay.  In other words, the County did not include the stipends when determining plaintiffs' "regular rate" of pay, which is the baseline upon which overtime pay is calculated.

The details of calculating an employee's "regular rate" are set forth in greater detail below, but at this point suffice it so say that defendants admit that the stipends should have been included in the overtime calculation.  Defendants contend (which plaintiffs dispute) that their failure to do so was inadvertent and was caused by faulty programming of the County's computer system that is used for calculating employees' pay.  *See* Def. Statement of Material Facts not in Dispute ("DSMF") (Dkt. #44-1) ¶¶ 31, 32.

The County began including the lump-sum roll call payments in July 2011.  According to defendants, the County did so after an investigation undertaken in response to an action that was commenced against the County by the Deputy Sheriffs' Association in July 2009.  *See* Dkt. #44-2 at 20, ¶ 22.  The County contends, however, that its prior failure to include the stipends when calculating overtime pay did not result in paying the plaintiffs less than they were entitled to under the FLSA for overtime, because the rate used by the County has always been more generous than the rate required by the FLSA.  DSMF ¶ 36.  Plaintiffs dispute that contention. Plaintiffs' Response to DSMF (Dkt. #46-2) ¶ 36.

The amended complaint (Dkt. #15) contains six causes of action:  three claims under the FLSA and three analogous claims under the New York Labor Law.  All of the claims arise out of events that allegedly took place during the "Collective Period," which is defined as the period

beginning six years prior to the filing of the complaint, up to the date on which this action is resolved.  Dkt. #15 ¶ 23.

Plaintiffs have stated that they do not oppose defendants' motion for summary judgment as to the first and third claims under the FLSA, and as to all of their Labor Law claims.  *See* Plaintiffs' Memo (Dkt #46-1) at 4 n.3.  That leaves only plaintiffs' second claim, which alleges that during the Collective Period, defendants violated the FLSA by willfully failing to include plaintiff's lump-sum stipends in their regular rate of pay when computing overtime payments. Dkt. #15 ¶ 40.  That claim, however, implicates several areas of dispute, in addition to whether the lump-sum stipends should be included in the regular rate of pay, as discussed below.

## DISCUSSION

### I. Claims Against Sheriff's Department and Sheriff O'Flynn

Before proceeding to the merits of plaintiffs' claims, I note that plaintiffs' claims against the Sheriff's Department and Patrick O'Flynn all effectively claims against the County itself.  As such, they are subsumed within plaintiffs' claims against the County.  Plaintiffs' claims against the Sheriff's Department and Sheriff O'Flynn are therefore dismissed.  *See Doe v. Green*, 593 F.Supp.2d 523, 535 (W.D.N.Y. 2009) (plaintiff's claims against county sheriff were subsumed within claims against county); *Pierce v. Chautauqua County*, No. 06-CV-644, 2007 WL 2902954, at *3 (W.D.N.Y. Sept. 28, 2007) ("since the Chautauqua County Sheriff's Department

and DSS are merely administrative arms of Chautauqua County, the claims against them must be dismissed").

## II. Stipends for Roll Call Briefings

Although only the second cause of action remains at issue, resolution of that claim presents several issues.  As outlined in the parties' Joint Statement of Facts and Issues, the first area of dispute concerns the calculation of plaintiffs' "regular rate of pay" for purposes of determining their overtime rate.  *See* JSFI ¶¶ 7-15.

Under the FLSA, employers are not permitted to "employ any ... employee[ ] ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  In common parlance, an hourly employee is entitled to be paid "time and a half" for overtime hours.

The basis for calculating an employee's overtime rate is the employee's "regular rate" of pay.  The regular rate is determined "by dividing [the employee's] total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.  Thus, the calculation includes both a time component and a pay component.

"The Supreme Court has clarified that the regular rate is 'the hourly rate actually paid for the normal, non-overtime workweek.'"  *Albers v. Board of County Comm'rs of Jefferson County, Colo.*, 771 F.3d 697, 705 (10th Cir. 2014) (quoting *Walling v. Helmerich & Payne*, 323 U.S. 37,

40 (1944)).  *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 595-97 (2d Cir. 2007),

*cert. denied*, 553 U.S. 1093 (2008); *McNamara v. Associated Press*, ___ F.Supp.2d ___, 2014

WL 4105961, at *6 (S.D.N.Y. 2014); 29 C.F.R. § 778.109.  When calculating an employee's

"regular rate," an employer must generally include "all remuneration for employment." 29 U.S.C.

§ 207(e); *Ramirez v. Riverbay Corp.*, 35 F.Supp.3d 513, 530 (S.D.N.Y. 2014).  As this case

demonstrates, however, that standard is sometimes easier to state than to apply.

 As stated, the parties in this action have identified certain facts and issues about which

they agree, and others about which they disagree.  The parties agree that the 15 minutes each day

that sergeants and deputies spend attending their own roll call briefings must be included in the

time aspect of the "regular rate" calculation.  JSFI ¶ 12.  They also agree that the stipends that

plaintiffs receive for attending briefings constitute remuneration for employment, and must

therefore be included in the regular-rate calculation.

 Beyond that, however, the parties disagree about certain matters related to the stipends.

Specifically, they disagree about how to treat the 15 minutes that sergeants spend administering

deputies' roll call briefings.  Plaintiffs contend that those 15 minutes should not be counted when

calculating sergeants' regular rate of pay under the FLSA, for purposes of calculating overtime.

 In plaintiffs' view, sergeants' $88 stipend only compensates sergeants for attending their

own briefings, not for conducting or attending deputies' briefings.  JSFI ¶ 14.  Defendants, on the

other hand, contend that the sergeants' $88 stipend is meant to cover both the time they spend at

their own briefings, and the time they spend conducting deputies' briefings.  JSFI ¶ 15.

If defendants' position is correct, then sergeants' "regular rate" of pay (and therefore their overtime rate) would be less than it would be under plaintiffs' position.  The reason is that, according to defendants, sergeants are compensated for 2.5 hours per week attending briefings (theirs and deputies'), as opposed to only 1.25 hours per week   So defendants' position has the effect of increasing the denominator when calculating sergeants' regular rate of pay, which in turn decreases their regular rate of pay.  In contrast, plaintiffs' argument that "the $88.00 bi-weekly roll call briefing payment [sergeants] receive is compensation for attending their own 15-minute briefing, not for administering the Deputies' 15-minute briefing" (Dkt. #46-1 at 13), would decrease the denominator, and increase sergeants' regular rate of pay.  That increase would result in a concomitant increase in their overtime rate.

The CBA does not expressly state whether sergeants' stipends are meant to cover their attendance at both their own and the deputies' briefings.  A fair reading of the CBA, however, indicates that the stipends only cover the sergeants' own briefings.

The stated rationale for the stipends is that, "[i]n recognition of the fact that all members of the bargaining unit are required to assemble for *a briefing* fifteen (15) minutes prior to the beginning of their tour of duty, payment for *such roll call* shall be made." (Emphasis added.) Notable by its absence is any mention of the fact that sergeants are expected to conduct or attend deputies' briefings, in addition to their own.

The only reasonable interpretation of this language is that sergeants' and deputies' stipends are intended to compensate them only for attending their own 15-minute briefings.  This provision states that members of the bargaining unit must attend "a briefing," that the briefing

- 8 -

lasts for 15 minutes, and that they are to be paid "for such roll call ... ."  Nothing in this provision suggests that sergeants' stipends are meant to compensate them for spending 30 minutes a day at two different roll calls.

The applicable regulation defines the "regular rate" as "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed."  29 C.F.R. § 778.108.  That regulation, which explicitly incorporates Supreme Court precedent, states that the regular rate is an "actual fact," which is "unaffected by any designation of a contrary 'regular rate' in the wage contracts."  *Id.* (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)).  The regular rate "must be drawn from what happens under the employment contract."  *Id.* (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948)).

In other words, the parties cannot simply designate a "regular rate" that does not reflect the reality of how employees are actually paid under the contract.  The primary purpose of that rule is to avoid having employees paid less than they should be, because of an artificially low "regular rate."  *See Walling*, 325 U.S. at 424 (parties' "freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes" of the FLSA).  *See also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1305 (10th Cir. 2011) ("a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due").

Based on these principles, and on the language of the CBA, I conclude that sergeants' $88 stipends cover only their attendance at their own briefings, not their time spent conducting or attending deputies' briefings.  Had the parties intended the sergeants' stipends to cover both

briefings, they could easily have said so in the CBA.  Instead, the CBA refers in the singular to attendance at "a briefing" and a "roll call."  The fact that sergeants are required to attend deputies' briefings does not change that result.

As stated, the court must focus on what hourly rate employees are actually paid, regardless of any contrary language in the employment contract.  But this case does not involve a contract that defines employees' "regular rate" in a way that does not reflect reality, or which designates an artificially low regular rate, so as to reduce employees' overtime payments.  The CBA simply indicates that sergeants and deputies receive a stipend, each pay period, for attending "a briefing" each workday.  The facts here are thus much different from those in *Walling*, in which the applicable wage agreement was based on an average figure for piece work, without taking into account the individual workers' actual hours worked and wages received during a particular workweek (which would have resulted in a higher figure).

Nor does an interpretation of the CBA as excluding sergeants' attendance at deputies' briefings present any inherent violation of the FLSA.  For one thing, the fact that the stipend does not cover the time spent by sergeants at deputies' briefings does not mean that such time is completely uncompensated, or that the time that they spend at those briefings does not matter, with respect to their eligibility for overtime.

First of all, the time that sergeants spend at deputies' briefings is compensated by means of time credits, as explained below; it is simply not covered by the $88 stipend. Furthermore, even if sergeants' attendance at deputies' briefings were entirely uncompensated, that would not give rise to a violation of the FLSA.  Nor would it mean that the Court could simply ignore the

language of the CBA and decide that the time spent by sergeants at deputies' briefings should be included in determining their "regular rate."  The Second Circuit has recognized that under the FLSA, employees can agree to work uncompensated time, below the overtime threshold, so long as the employees are paid at least the statutory minimum wage.  *See Lundy v. Catholic Health Care Sys. of Long Island*, 711 F.3d 106, 116 (2d Cir. 2013) ("So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week").[2]

In addition, uncompensated time, below the overtime threshold, does matter, in terms of an employee's *eligibility* for overtime.  In the case at bar, for example, a sergeant who, in a given week, works 41 hours (including 2.5 hours spent at sergeants' and deputies' briefings) would be entitled to one hour of overtime pay.  That would be true even if the 1.25 hours spent at deputies' briefings were entirely uncompensated; *see Lundy*, 711 F.3d at 116; *Nakahata v New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013).  The fact that some time worked, up to 40 hours in a given week, is uncompensated, simply affects the calculation of the employee's "regular rate" for overtime purposes; it does not affect the employee's eligibility for overtime pay.

---

[2]There is no claim here that plaintiffs make less than the FLSA minimum wage.  Based on *Lundy*, plaintiffs have abandoned any claim for unpaid "gap time," *i.e.*, unpaid time below the 40-hour threshold, and the evidence submitted indicates that all the plaintiffs make well above the federal minimum wage.

### III. Allocation of Roll-Call Stipends

There is also an issue concerning how the roll-call stipends should be allocated to employees' pay.  Plaintiffs contend that although defendants have been including plaintiffs' roll call stipends in plaintiffs' overtime rate calculations since July 2011, defendants have been improperly attributing the entire lump sum to the second week of each plaintiff's two-week pay period.

What this means is that an employee's regular rate will be higher in the second week of the pay period, because the employee will be receiving more pay for the same number of hours worked.  So if the employee works overtime in the first week of the pay period, but not in the second week, the employee's overtime pay will be less than it would be if the stipend were apportioned equally between the two weeks in the pay period.

At first blush, this may seem to be a matter of little consequence.  Presumably, any diminution of the regular rate in the first week will be offset by a corresponding inflation of the regular rate in the second week, so that over the long run, the effect could be neutral.

The fact remains, however, that an employee's regular rate must be calculated based on a normal, individual workweek; *see* 29 C.F.R. § 778.104 ("Each workweek stands alone").  If the stipends represent compensation for attending daily briefings, it makes little sense to include the entire stipend in the second week of the pay period, simply because that is when it is actually paid.  I therefore conclude that for purposes of determining an employee's regular rate of pay, roll call stipends should be evenly divided between each week of each pay period.

## IV. Compensatory Time Credits

The parties also disagree about how to treat the compensatory time credits that plaintiffs receive for hours worked between 37.5 and 40 in a given workweek, for purposes of calculating their regular rate of pay under the FLSA.  Plaintiffs contend that those time credits should be included as "remuneration for employment" (and thus included in the "regular rate" calculation) at the time they are earned and credited, while defendants contend that remuneration for those hours does not occur until the compensatory time off is actually taken.

Under plaintiffs' theory, the compensatory time scheme does not reduce their regular rate of pay.  Plaintiffs are paid outright for 37.5 hours, and receive compensatory time, at the same hourly rate, for their next 2.5 hours in any given workweek.  The hourly rate, then, remains unaffected for all hours up to 40.

Defendants' theory would reduce plaintiffs' regular rate, for overtime purposes.  If a sergeant works 40 hours in a given week (including 2.5 hours at sergeants' and deputies' briefings), that sergeant would only be paid (leaving aside the roll-call stipend) for 37.5 hours, at the contract rate, with the remaining 2.5 hours going into the sergeant's leave "bank."  Thus, the sergeant's regular rate, for overtime purposes, would be 37.5/40 of the contract rate.

The parties agree with each other that the statute, regulations and case law provide little if any explicit guidance on this issue.  *See* Plaintiffs' Mem. (Dkt. #46-1) at 10; Def. Response (Dkt. #49) at 12-13.  A fair reading of those authorities, however, suggests that defendants are correct that these time credits should be factored in at the time they are utilized, rather than when they are earned, in determining plaintiffs' regular rate of pay.

The FLSA defines "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee."  29 U.S.C. § 207(e).  "There is a statutory presumption 'that remuneration in any form is included in the regular rate calculation.'"  *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (quoting *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 175, 187 (3d Cir. 2000)).

There is no dispute here that the time credits at issue constitute "remuneration for employment paid to ... the employee."  The CBA states that "[h]ours worked between [37.5] and [40] hours within the workweek shall be paid for in compensatory time off at the straight time rate."  (CBA § 10.2.1).  The relevant question is not whether the time credits *are* remuneration, however, but how they should be figured into the regular-rate calculation.

As the CBA recognizes, in a normal workweek, at least some of the hours worked by both sergeants and deputies between 37.5 and 40 hours will be spent at roll call briefings.  In fact, sergeants typically spend 2.5 hours per week at such briefings; thus, in a typical week, sergeants spend all the hours between 37.5 and 40 attending briefings.

Sergeants and deputies are compensated for at least some of that time by their stipends.  To hold that they are also compensated by their receipt of time credits, at the time that they are credited with them, would mean in effect, that they were being paid twice for the same time: once, by the time credits, and twice, by the stipends.  If the time credits were deemed to be compensation at the time they are earned, it is difficult to see what the rationale would be for giving employees an additional stipend for attending briefings.

Again, the Court's focus, in determining what constitutes the "regular rate," must be on what employees are "actually paid" in a normal workweek. *Bay Ridge*, 334 U.S. at 460.  In the case at bar, an employee who works 40 hours in a given week receives direct payment for 37.5 hours, plus a stipend for attending roll call briefings, plus a time credit.  By its very nature, the time credit constitutes deferred compensation; it is to be used at some point in the future.

I also note that the CBA states that "[h]ours paid for but not worked for holidays, compensatory time off, and vacations leave [sic] shall be counted as time worked for the purpose of calculating overtime."  CBA § 10.2.3.  Thus, the CBA contemplates that when an employee utilizes compensatory time, that time is treated as if the employee had worked that time.  That further reinforces the view that compensatory time credits should be figured into the regular-rate calculation when they are utilized, not when they are earned.  Those credits are "actually paid" not when they go into the employee's leave bank, but when the employee takes advantage of them, by taking time off.[3]

## V. Failure to Include Roll Call Payments Prior to July 2011

Defendants also contend that although they did not include the lump-sum roll call payments when determining overtime pay until July 2011, that did not result in an FLSA

---

[3]In that sense, compensatory time credits are analogous to vacation leave.  While vacation time is earned in addition to hours paid directly (unlike compensatory time, which is credited for future use in lieu of direct payment), both vacation and compensatory time are counted as time worked when they are actually utilized, not when they are credited to the employee's leave bank.  Both compensatory and vacation time, then, constitute a form of deferred payment, which is not realized until the employee chooses to use it.

violation, because defendants' use of employees' contract rate in calculating overtime payments resulted in the County paying more than was required under the FLSA.

In support of that assertion, defendants have submitted an affidavit of Brayton Connard, who is the Director of Human Resources for the County.  (Dkt. #44-2.)  The gist of defendant's position, as set forth by Connard, is that the County has always used employees' contractual hourly rate of pay when calculating overtime, and that the contractual rate is slightly higher than the FLSA regular rate.  Connard's affidavit uses one particular deputy as an example, and purports to show that the deputy, who worked 49 hours in a certain week, ended up receiving $3.25 more in overtime payment than he was entitled to under the FLSA.  Connard Aff. ¶ 26.

In response, plaintiffs contend that some deputies' statutory regular rate was higher than their contract rate in overtime weeks.  Plaintiffs have submitted their own evidence in support of that assertion.  *See* Dkt. #46-1 at 12; Dkt. #46-6 and attached exhibits.

Having considered both sides' submissions, I deny defendants' motion on this ground. There may be individual plaintiffs who received all they were entitled to under the FLSA, notwithstanding defendants' failure to include roll call payments prior to July 2011, but the evidence before me indicates that this may differ from plaintiff to plaintiff, depending on the individual plaintiff's contractual rate of pay and hours worked.  The Court cannot rule, based on one plaintiff's payment for one half of one workweek, that the County's practice of failing to include roll call payments prior to July 2011 did not result in any harm to plaintiffs.

## VI. Law Enforcement Exclusion

Defendants also argue that, even assuming the plaintiffs did not receive overtime at 1.5 times their regular rate, defendants are not liable, by virtue of the FLSA's law enforcement exemption.

Section 207(k) of the FLSA provides a partial exemption from § 207(a)'s time-and-a-half requirement for employees of public law enforcement agencies.  In plain English–which is not the language of the statute itself–what this statute does is set a higher threshold number of hours that law enforcement personnel can work in a 28-day work period–or a proportional number of hours in a shorter work period of at least seven days–before these employees become entitled to overtime compensation.  *Calvao v. Town of Framingham*, 599 F.3d 10, 13 (1st Cir. 2010).[4]

---

[4]Section 207(k) provides that

No public agency shall be deemed to have violated [the general overtime requirement] with respect to the employment of ... any employee in law enforcement activities (including security personnel in correctional institutions) if--

> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

(continued...)

This provision, then, "provides a partial exemption for public agency employers of law enforcement and fire protection personnel by upping the threshold at which overtime compensation entitlement begins." *Alex v. City of Chicago*, 29 F.3d 1235, 1238 (7th Cir. 1994). Where the exemption applies, a "public employer does not owe overtime to an employee engaged in law enforcement activities until he works more than 86 hours per two-week period," or in other words, 43 hours per week. *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2012) (citing 29 C.F.R. § 553.230).

As explained by the Court of Appeals for the First Circuit, "Section 207(k) eases the burden of the FLSA's overtime provisions on state and local employers two ways. The partial exemption provides for higher hourly standards before requiring the payment of overtime; further, it permits overtime hours to be computed over a workweek that may be longer than a forty-hour workweek and that the employer selects." *Calvao*, 599 F.3d at 14.

In the case at bar, the parties dispute whether the § 207(k) exemption may be applied to plaintiffs. Specifically, plaintiffs contend that defendants have not actually adopted or utilized a seven-day work period, in practice, that the burden is on the employer to establish its entitlement to the exemption, and that defendants have failed to do so. Defendants admit that they have not previously used the § 207(k) exemption when calculating overtime, but they contend that this does not foreclose their reliance on it now.

---

[4](...continued)
compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Before examining the evidence relating to this issue, it is necessary to understand the relevant parameters.  "Work period," as used in § 207(k), "is a term of art that is not the equivalent of a 'workweek,' 'administrative workweek,' or 'pay period;' nevertheless, the FLSA does not specifically define the term."  *Federal Air Marshals(FAM) FAM 1 v. United States*, 84 Fed.Cl. 585, 593-94 (2008).

> The Department of Labor has, however, promulgated a regulation stating that
>
> [a]s used in section 7(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and the legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days.  Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day.  Once the beginning and ending time of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within the period.

29 C.F.R. § 553.224(a) (2008).

Courts have held that "an employer need not 'affirmatively adopt' the § 207(k) exemption for it to apply," and that an exemption-qualifying "work period can be established through implementation."  *Foley v. City of Buffalo*, No. 06-CV-49, 2011 WL 3176455, at *4, *5 (W.D.N.Y. July 27, 2011) (quoting *Freeman v. City of Mobile*, 146 F.3d 1292, 1297 (11th Cir. 1998)) (other citations omitted).  In other words, the question is simply whether the employer has actually implemented a work period in which employees regularly work a recurring cycle between 7 and 28 days, regardless of whether the employer has formally or expressly adopted such a work period.  *Id.* (citing *Birdwell v. City of Gadsden*, 970 F.3d 802, 806 (11th Cir. 1992)).  *See also Federal Air Marshals*, 84 Fed.Cl. at 594 ("employers need not specifically mention § 207(k) in their employment policies, they must simply establish a 'bona fide, fixed, recurring

period of between 7 and 28 days'") (quoting *O'Brien v. Town of Agawam*, 350 F.3d 279, 291 n.

21 (1st Cir. 2003)); *Rosano v. Township of Teaneck*, 754 F.3d 177, 186 (3d Cir. 2014)

("employers seeking to qualify for the § 207(k) exemption need not express an intent to qualify

for or operate under the exemption.  Employers must only meet the factual criteria set forth in §

207(k)").

      In their papers, the parties focus mainly on whether defendants may avail themselves now

of the § 207(k) exemption, having failed to claim the exemption previously.  In my view,

however, the most pertinent question here is not whether § 207(k) can apply retroactively, but

whether it applies here at all.  I find, as a matter of law, that it does not, and that defendants are

not entitled to the exemption.

      To prevail on a motion for summary judgment, a party must demonstrate that there are no

genuine issues of material fact, and that the movant is entitled to judgment as a matter of law.

*Boyd v. J.E. Robert Co., Inc.*, 765 F.3d 123, 125 (2d Cir. 2014).  Conversely, where the moving

party demonstrates the absence of a genuine issue of material fact, the opposing party must come

forward with specific evidence demonstrating the existence of a genuine dispute of material fact,

to be resolved at trial.  *Robinson v. Concentra Health Services, Inc.*, 781 F.3d 42, 44 (2d Cir.

2015).

      Those general principles must be applied in light of the particular claims at issue.  With

respect to FLSA cases, it is the employer's burden to show that it is entitled to an FLSA

exemption, and all such exemptions are construed narrowly.  *Watkins v. City of Montgomery*, 775

F.3d 1280, 1283 (11th Cir. 2014); *Birdwell*, 970 F.2d at 805.

In the case at bar, the CBA states at § 9.1.1 that employees' "'regular workweek' ... shall be Monday through Friday ... ."  Dkt. #46-4 at 8.  By its terms, then, the CBA sets forth a five-day workweek.  No mention is made of any other work period, of seven days or any other duration.

Defendants contend that "it is undisputed that the County has utilized a seven day period that commences on Saturday and ends on Friday for the purpose of calculating hours worked in a week."  Def. Reply Mem. (Dkt. #49) at 3.  That assertion, however, is hardly "undisputed."  Plaintiffs very much dispute defendants' assertion that they work a seven-day work period.  *See* Plaintiffs' Mem. (Dkt. #46-1) at 14.

What defendants presumably mean is that the undisputed facts show that, notwithstanding the language of the CBA concerning a five-day workweek, the County in fact uses a seven-day work period.  The evidence submitted, though, does not support that assertion.

In support of defendants' assertion that the County has used a seven-day work period, defendants cite paragraph 14 of their Statement of Material Facts (Dkt. #44-1).  That paragraph, in turn, cites paragraph 9 of defendants' Exhibit 2 (Dkt. #44-2).

Defendants' Exhibit 2 is Human Resources Director Brayton Connard's affidavit.  He states that under the CBA, the parties established a workweek of 7.5 hours per day, Monday through Friday, but that they also "established [that the] work period for the purposes of calculating hours worked in a week is a seven day period that commences on Saturday and ends on Friday."  Dkt. #44-2 ¶ 9.  Connard cites no other evidence in support of that assertion.

- 21 -

In short, defendants have not presented evidence giving rise to a genuine issue of fact about whether they have adopted a valid § 207(k) work period, *i.e.*, whether in fact plaintiffs have worked on an "established and regularly recurring period of work" of between 7 and 28 days. An unsupported assertion to that effect is not enough, particularly when the CBA itself only mentions a five-day workweek. *See O'Brien*, 350 F.3d at 291-92 (concluding that defendant town had not established qualifying work period under § 207(k), and noting that the applicable CBAs explicitly set forth a six-day work cycle). Since it is defendants' burden to demonstrate their entitlement to the benefit of the § 207(k) exemption, I find that their failure of proof in this regard entitles plaintiffs to summary judgment on this issue.[5]

## VII. Willfulness

"The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) (citing 29 U.S.C. § 255(a)).

This provision comes into play here because of defendants' assertion that their failure to include plaintiffs' roll-call briefing pay in their overtime calculations before July 2011 was

---

[5]Defendants' reliance on *Martin v. Coventry Fire District*, 981 F.2d 1358 (1st Cir. 1992), and *Feaser v. City of New York*, No. 93 Civ. 5739 (S.D.N.Y. June 9, 1995), is misplaced. As the First Circuit pointed out in *Calvao*, "There was no indication that the defendant municipal employer in *Martin* had not used a § 207(k)-compliant work period, nor did the *Martin* plaintiff so argue." 599 F.3d at 18 n.5 (citing *Martin*, 981 F.2d at 1359-60); *see also Parolin v. City of Boston*, 327 F.Supp.2d 101, 106 (D.Mass. 2004) (stating that "for all that appears, the fire district [in *Martin*] had simply failed to pay overtime at all"). The court in *Feaser* followed *Martin*, based on similar facts. *See* 1995 WL 350848, at *3.

"innocent," and does not rise to the level of willfulness.  *See* Def. Mem. (Dkt. #44-6) at 21;

DSMF ¶ 32.  Plaintiffs allege that the violation was willful, and that damages therefore stretch

back to October 2007, three years before this action was commenced.

A violation is "willful" within the meaning of 29 U.S.C. § 255(a) if "the employer either

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

statute." *Parada*, 753 F.3d at 71 (internal quotation omitted).  If an employer acts unreasonably

but not recklessly, its action should not be considered willful. *Id.*  Merely negligent conduct is

not willful. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d

115 (1988).  The plaintiff bears the burden of proof on the issue of willfulness. *Parada*, 753 F.3d

at 71.

On the record before me, I have some doubts about whether plaintiffs can prevail on the

issue of willfulness.  Connard states in his affidavit that he was not aware that the payroll system

did not take roll call briefing pay into account until he "conducted an investigation in response to

a similar action that was commenced against the County by the Deputy Sheriffs' Association in

July of 2009." Dkt. #44-2 at 20, ¶ 22.  To some extent, resolution of this issue depends on the

credibility of that assertion, which is not something that the Court can decide on a motion for

summary judgment. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 146 (2d

Cir. 2012).

While plaintiffs have not submitted any "smoking gun" evidence tending to show that the

County willfully chose to avoid its obligations in this regard, then, this issue presents questions

of fact that cannot be resolved on a motion for summary judgment.  For one thing, the prior

action referenced by Connard was commenced in July 2009, two years before the County changed its practice concerning roll call pay.  It is not apparent why it took two years for the County to correct this alleged oversight.

Furthermore, the Court cannot simply accept the truth of Connard's assertions.  Even assuming that he was not aware of this alleged error prior to his investigation, that does not mean that the County had not previously made a conscious decision to exclude roll call payments from its calculation of overtime pay.

"Because of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, '[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact.'"  *Inclan v. New York Hospitality Group, Inc.*, __ F.Supp.3d __, 2015 WL 1399599, at *9 (S.D.N.Y. Mar. 26, 2015) (quoting *Ramirez v. Rifkin*, 568 F.Supp.2d 262, 268 (E.D.N.Y. 2008) (collecting cases)).  *See*, *e.g.*, *Ozawa v. Orsini Design Associates, Inc.*, No. 13-CV-1282, 2015 WL 1055902, at *7 (S.D.N.Y. Mar. 11, 2015) (genuine factual questions remained regarding whether employer's conduct was willful, where defendant's principal testified that she relied on underlings to determine whether company was in compliance with FLSA).  I likewise conclude that this issue presents questions of fact, to be determined by the finder of fact.  Whether a two- or three-year limitations period applies to plaintiffs' claims, then, cannot be decided at this stage, but must await determinations by the finder of fact.

**CONCLUSION**

Plaintiffs' and defendants' motions for summary judgment are granted in part, and denied in part.

Plaintiffs' motion for summary judgment (Dkt. #46) is granted to this extent:

1. Sergeants' $88 biweekly stipend paid to sergeants covers only attendance at their own briefings;

2. The $88 biweekly stipend must be equally allocated to each week worked, and not just to the second week of the pay period;

3. Defendants may not rely on the law enforcement exclusion set forth at § 207(k) of the Federal Labor Standards Act to deny overtime.

Defendants' motion for summary judgment (Dkt. #44) is granted to this extent:

1. Plaintiffs' claims against the Monroe County Sheriff's Department and Monroe County Sheriff Patrick O'Flynn are dismissed.

2. Compensatory time off, for hours worked between 37.5 and 40 in a workweek, must be counted as income when utilized by the employee, not when earned.

In all other respects, the motions are denied, as there exist genuine issues of material fact, with respect to the following issues:

1. Whether defendants' failure to pay stipends prior to 2011 resulted in compensable harm to plaintiffs;

2.  Whether defendants' failure to pay stipends prior to 2011 was willful.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        May 20, 2015.